IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAYNE MICHAEL MARTEN, # A6094402, <br><br> Plaintiff, <br><br> v. <br><br> HALAWA CORRECTIONAL FACILITY, *et al.*, <br><br> Defendants. | Civil No. 22-00393 SOM-WRP <br><br> ORDER: (1) DISMISSING FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE TO AMEND; AND (2) DENYING AS MOOT REQUEST FOR AN EXTENSION OF TIME TO FILE AMENDED COMPLAINT |

**<u>ORDER DISMISSING FIRST AMENDED PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE TO AMEND AND DENYING AS MOOT REQUEST FOR AN EXTENSION OF TIME TO FILE AMENDED COMPLAINT</u>**

Before the Court is a First Amended Prisoner Civil Rights Complaint

("FAC") filed by pro se Plaintiff Chayne Michael Marten ("Marten") pursuant to

42 U.S.C. § 1983,[1] ECF No. 6,[2] and a Request for an Extension of Time to File

Amended Complaint ("Extension Request"), ECF No. 12. In the FAC, Marten

alleges that Defendants violated the First Amendment by retaliating against him

---

[1] Marten is currently incarcerated at the Halawa Correctional Facility. *See* ECF No. 6 at 1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6094402"; and select "Search") (last visited Oct. 21, 2022).

[2] In the same envelope as the FAC, Marten submitted five "letters" to the Clerk of Court. *See* ECF Nos. 7, 8, 9, 10, 11. The Court has considered all these documents in screening the FAC.

and interfering with his mail, and the Eighth Amendment by allowing a hazardous condition to persist and denying him adequate medical care.[3]  The FAC is based on events at the Halawa Correctional Facility ("HCF"), a state prison facility.

After conducting the screening required by 28 U.S.C. § 1915A(a), the Court DISMISSES the FAC with partial leave granted to amend.  *See* 28 U.S.C. § 1915A(b).  If Marten wants this action to proceed, he must file an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend on or before November 23, 2022.  In the alternative, Marten may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).  The Extension Request is DENIED as moot.

## I. <u>STATUTORY SCREENING</u>

Pursuant to 28 U.S.C. § 1915A(a), the Court is required to screen all civil actions filed by prisoners seeking redress from a government entity or an officer or employee of a government entity.  *See Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016).  During screening, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint is

---

[3] Marten names as Defendants the State of Hawaii, Warden Lyle Antonio, Chief of Security Joanna White, ACO Asato, Medical Staff Supervisor Tina, and Dr. Hatakeyama.  ECF No. 6 at 1.

frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). "If the . . . court determines that any of these grounds is satisfied, it must dismiss the case, and enter a 'strike' against the plaintiff prisoner." *Byrd*, 885 F.3d at 641.

Failure to state a claim under 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.[4] *See id.*

During screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

---

[4] In deciding whether dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6), this Court's review is generally limited to the contents of the pleading. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court may also consider, however, "certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the Court has considered the FAC and its accompanying exhibit. *See* ECF Nos. 6, 6-1.

Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  When it is clear a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  <u>BACKGROUND</u>[5]

On August 21, 2020, Marten slipped and fell on a wet floor at the HCF. ECF No. 6 at 5–6.  After landing on his right side, Marten felt pain in his hip, back, and neck.  ECF No. 6-1 at 5.  Marten visited the HCF's medical unit and was given ice and ibuprofen.  *Id*.  Marten returned to the medical unit the following day, and he received ice and Tylenol.  *Id*.

On August 24, 2020, Marten signed a step-one administrative remedy form asking for X-rays and to see a doctor.  *Id*.  Dr. Hatakeyama ordered X-rays of Marten's hip and back.  *Id*. at 1.  The X-rays revealed no acute injuries.  *Id*.  After Marten continued to experience pain, Dr. Hatakeyama met Marten and ordered additional X-rays of Marten's neck.  *Id*.  These X-rays also revealed no acute injuries.  *Id*.  Dr. Hatakeyama referred Marten for physical therapy.  *Id*.

---

[5] At screening, Marten's well-pleaded factual allegations are accepted as true.  *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On September 27, 2020, Marten submitted a medical request form asking when his physical therapy sessions would begin. *Id*. at 17. An unidentified prison official informed Marten that he had been referred for physical therapy, but those appointments were scheduled in the order that the referrals were made, and the waitlist was long. *Id*.

On October 16, 2020, Marten submitted a step-two administrative remedy form asking to be seen by a neurosurgeon. *Id*. at 2. Marten then submitted a step-three administrative remedy form on December 23, 2020. *Id*. at 16. Marten again asked to see a neurosurgeon, and he also complained that he sometimes had to wait "several days" for refills of his prescribed pain medication. *Id*. at 16; *see also id.* at 23.

On February 21, 2021, Medical Director Caroline Mee, who is not named as a Defendant, wrote a letter to Marten in response to his step-three administrative remedy form. *Id*. at 1, 4. In the letter, Mee explained, among other things, that Marten had been told that Dr. Hatakeyama's treatment plan called for physical therapy. *Id*. at 1. Mee also explained that Marten's physical therapy sessions were not immediately scheduled because of the number of inmates ahead of him on the waitlist. *Id*. at 1, 4. Mee noted that a scheduled December 2020 physical therapy session for Marten had to be cancelled because of a COVID outbreak. *Id*. at 4. Mee also noted that that appointment was then rescheduled. *Id*. Mee noted that

Marten had also been informed of the process to request a private medical provider, if he wanted to see one. *Id*. at 1. Mee reminded Marten that he was welcome to seek and pay for a visit to a private neurosurgeon. *Id*. at 4.

On March 9, 2021, Marten submitted another medical request form asking for pain medication and physical therapy sessions. *Id*. at 19. The form reflects that Marten's ibuprofen and acetaminophen prescriptions were refilled, and that Marten was reminded that he had been referred for physical therapy. *Id*. On October 1, 2021, Marten submitted another step-one administrative remedy form stating that, despite participating in physical therapy, he continued to experience pain. *Id*. at 11. Marten again asked to see a neurosurgeon. *Id*.

In early 2022, Marten's wife found a neurosurgeon at the Queen's Medical Center willing to see Marten. *See id.* at 10. Marten was seen by this neurosurgeon, who prescribed medication for Marten's pain and to help him sleep. *Id*. at 8.

Marten commenced this action by signing the original Complaint on August 16, 2022. ECF No. 1. The Court received and filed the original Complaint on August 25, 2022. *Id*. The Court received the fees associated with this action on September 20, 2022. ECF No. 4.

On September 23, 2022, the Court issued an Order Dismissing Complaint with Partial Leave to Amend. ECF No. 5. The Court dismissed with prejudice any

claims against the HCF, State of Hawaii, and Department of Public Safety ("DPS"), because those claims were barred by the Eleventh Amendment. *Id.* at 6. The Court also dismissed with prejudice any claim for damages against DPS Director Max Otani in his official capacity and any claims against Otani based solely on his supervisory position with the DPS. *Id.* at 6–9.

The Court concluded that Marten failed to state a plausible claim based on the medical care that he had received at the HCF. *Id.* at 9–14. The Court explained that Marten failed to allege that he suffered a serious medical need immediately after his fall, or that any prison official acted with deliberate indifference to such a need. *Id.* at 12–13. The Court further explained that Marten failed to allege that a prison official was deliberately indifferent to a serious medical need in the months after his fall. *Id.* at 13–14. Specifically, the Court noted that Marten did not say who he complained to, what he said to them, or how they responded. *Id.* at 14. The Court instructed Marten to file an amended pleading on or before October 24, 2022. *Id.*

Marten signed the FAC on October 10, 2022, and the Court received and docketed it on October 17, 2022. ECF No. 6 at 1, 8. Marten marked boxes to indicate that his claims involve "Mail," "Retaliation," and "Medical care." ECF No. 6 at 5. Marten seeks unspecified damages. ECF No. 11 at 1.

### III. <u>DISCUSSION</u>

**A.  Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury because of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

**B.  Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation

omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984). It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law. *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Nor does it bar suits for damages against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Marten again names as a Defendant the State of Hawaii. ECF No. 6 at 1. As the Court explained in dismissing the original Complaint, ECF No. 5 at 5–6, any claims against the State of Hawaii are barred by the Eleventh Amendment. *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)). Any claims against the State of Hawaii, therefore, remain DISMISSED with prejudice.

The Court construes Marten's other claims as being brought against the remaining Defendants in their individual capacity because Marten seeks only damages. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities" (emphasis in original)).

## C. Supervisory Liability

Marten names as Defendants three supervisory officials at the HCF—that is, Warden Lyle Antonio, Chief of Security Joanna White, and "Medical Staff Supervisor Tina."  ECF No. 6 at 1.

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.   "A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks and citations omitted).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted).

"Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his

subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted).  A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Here, Marten does not allege that Antonio, White, or "Medical Staff Supervisor Tina" were personally involved in any constitutional violation.  Nor does he allege any causal connection between their conduct and a constitutional violation.  *See* ECF No. 6 at 5–6; *see also* ECF Nos. 7, 8, 9.  Marten cannot state a claim against Antonio, White, or "Medical Staff Supervisor Tina" solely because of their supervisory positions at the HCF.  *See DePaepe v. White*, Civ. No. 20-00198 JAO-WRP, 2020 WL 6531006, at *3–4 (D. Haw. Nov. 5, 2020) ("Because [Plaintiff] alleges no facts showing [DPS Director's] personal involvement in his claims, he fails to state a colorable claim against [him].").

Marten's claims against Antonio, White, and "Medical Staff Supervisor Tina" are DISMISSED with leave granted to amend.

### D. First Amendment

#### 1. Retaliation

Marten marked a box indicating that his claims involve retaliation.[6]  *See* ECF No. 6 at 5.

A viable First Amendment retaliation claim in the prison context requires: (1) an assertion that a state actor took some adverse action against a prisoner; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the prisoner's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Marten fails to state a retaliation claim because he does not allege that any Defendant took an adverse action against him because of his protected conduct.  At one point, Marten alleges that his original Complaint was returned to him by an unnamed prison official.  *See* ECF No. 7 at 1.  Marten fails to connect this alleged conduct, however, with his protected conduct.  Moreover, Marten has not plausibly alleged that the temporary return of his original Complaint chilled the exercise of his First Amendment rights.  Indeed, Marten commenced this action by sending the original Complaint to the Court.  ECF No. 1.

---

[6] Marten marked three boxes under Count I.  ECF No. 6 at 5.  If Marten decides to file an amended pleading, he is reminded that he should check only one box for each count.  If any claim involves more than one issue, each issue should be stated in a separate count.

Marten's retaliation claim based on the handling of his original Complaint is DISMISSED with leave granted to amend.

## 2. Mail

Marten also marked a box indicating that his claims involve the handling of his mail. *See* ECF No. 6 at 5.

Prison inmates have "a First Amendment right to send and receive mail." *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (internal quotation marks and citation omitted). A prison may adopt regulations or practices for incoming mail which impinge on a prisoner's First Amendment rights if the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989)).

Here, Marten's only factual allegations related to the handling of his mail involve the temporary delay in sending his original Complaint. *See* ECF No. 7 at 1. Marten signed the original Complaint on August 16, 2022, and the Court received it nine days later, on August 25, 2022. *See* ECF No. 1 at 1, 8. Any isolated, temporary delay in sending the original Complaint is insufficient to state a plausible claim for relief. *See Jackson v. Medina*, Case No. EDCV 13-01930-JVS

13

(DTB), 2016 WL 7638200, at *3 (C.D. Cal. Oct. 31, 2016) ("[A] temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights."), *report and recommendation adopted*, No. EDCV 13-01930-JVS (DTB), 2017 WL 43919 (C.D. Cal. Jan. 3, 2017); *Grigsby v. Horel*, No. C 08-1475-CRB (PR), 2011 WL 13309071, at *2 (N.D. Cal. July 11, 2011) (same), *aff'd*, 529 F. App'x 859 (9th Cir. 2013).

Marten's claim based on the handling of his mail is DISMISSED with leave granted to amend.

## D. Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Id.* (citations omitted).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective." *Norbert v. County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (quotation marks and citations omitted).  Under the objective requirement, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation marks and citations omitted).  Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*; *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  The subjective requirement, relating to the prison official's state of mind, requires "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation marks and citations omitted).  This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

### 1. Slip and Fall

Marten suggests that ACO Asato violated his constitutional rights by not warning him about the slippery floor.  ECF No. 6 at 5.

In general, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment."  *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (internal quotation marks and citation omitted) (ellipsis in original); *see also Sharrott v. Halawa Prison ADA Compliance Team*, Civ. No. 18-00486 JMS-RT, 2019 WL 191638, at *4 (D. Haw. Jan. 14, 2019) ("Courts have generally concluded that prisoners fail to state a constitutional claim regarding simple slip and fall accidents in prisons."); *Ah Cheung v. State of Hawaii*, Civ. No. 17-00257 DKW-KSC, 2017 WL 2785336, at *3 (D. Haw. June 27, 2017) ("Federal courts have repeatedly rejected Eighth Amendment slip and fall claims.").  Where exacerbating circumstances are present, however, "[s]lippery floors without protective measures could create a sufficient danger to warrant relief."  *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (allowing claim to proceed where inmate was on crutches, he had fallen and injured himself several times, and prison guards were aware of prior falls).

Here, Marten alleges no exacerbating circumstances that elevate his simple negligence claim to a constitutional violation.  The absence of signs or cones around the wet area, without more, is not enough.  *See Duran v. Tinetti*, No. 1:12-

CV-01606 GSA PC, 2013 WL 322514, 2 (E.D. Cal. Jan. 28, 2013) (dismissing

Eighth Amendment claim based on lack of warning signs around large puddle).

Indeed, nothing suggests that ACO Asato was even aware of the slippery floor

before Marten fell.

Marten's claim against ACO Asato based on the slippery floor is therefore

DISMISSED with leave granted to amend.

## 2. Denial of Adequate Medical Care

Marten alleges that he was denied adequate medical in the months after his

fall.  ECF No. 6 at 5–7.

"Individuals in state custody have a constitutional right to adequate medical

treatment." *Sandoval*, 985 F.3d at 667 (citing *Estelle v. Gamble*, 429 U.S. 97,

104–05 (1976)).  "For inmates serving custodial sentences following a criminal

conviction, that right is part of the Eighth Amendment's guarantee against cruel

and unusual punishment." *Sandoval*, 985 F.3d at 667.

"In order to prevail on a claim under the Eighth Amendment for inadequate

medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical

needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  "This

includes both an objective standard—that the deprivation was serious enough to

constitute cruel and unusual punishment—and a subjective standard—deliberate

indifference." *Id.* (quotation marks omitted).

To meet the objective element, a plaintiff must first demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Edmo v. Corizon*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (quotation marks omitted). "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez*, 203 F.3d at 1131 (internal quotation marks omitted). "Serious medical needs can relate to physical, dental and mental health." *Edmo*, 935 F.3d at 785 (quotation marks omitted).

If a prisoner "establishes a sufficiently serious medical need, he must then show the [official's] response to the need was deliberately indifferent." *Edmo*, 935 F.3d at 786 (quotation marks omitted). The indifference to a prisoner's medical needs must be "substantial." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013). "Mere 'indifference,' 'negligence' or 'medical malpractice'" will not support a denial-of-medical-care claim. *Id.* at 1082. "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id.* "To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the

18

circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (quotation marks omitted) (brackets in original).

Here, Marten alleges that he injured his neck and back, experienced numbness in his right arm and hand, and had difficulty sleeping.  ECF No. 6 at 5, 7.  Even assuming Marten had a serious medical need, he has not alleged that any Defendant was deliberately indifferent to that need.

To the extent Marten's claims are directed at Dr. Hatakeyama, Marten does not dispute that Dr. Hatakeyama ordered X-rays soon after he asked for them.  *See* ECF No. 6-1 at 1.  Nor does Marten dispute that Dr. Hatakeyama ordered additional X-rays and referred Marten for physical therapy when his pain persisted. *Id*.  Marten does not allege that he had any subsequent communication with Dr. Hatakeyama.  If he did, Marten does not say when this occurred, what he said to Dr. Hatakeyama, or how Dr. Hatakeyama responded.  Thus, Marten has not plausibly alleged that Dr. Hatakeyama acted with deliberate indifference to a serious medical need.

Marten's denial of medical care claims against Dr. Hatakeyama are DISMISSED with leave granted to amend.

## IV.  <u>LEAVE TO AMEND</u>

The FAC is DISMISSED with partial leave granted to amend.  Marten may file an amended pleading on or before November 23, 2022.  Marten may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the FAC or why new claims are warranted at the time an amended document is submitted.  Claims that are not related or warranted may be subject to dismissal.

Marten must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Except with respect to parties and claims dismissed with prejudice in this order, any failure to rename a Defendant or to reassert a claim in an amended complaint may be deemed a voluntary dismissal of that party or claim.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  **28 U.S.C. § 1915(g)**

If Marten fails to file an amended complaint or is unable to amend his claims

to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C.

§ 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action

or appeal a civil judgment in forma pauperis

> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical
> injury.

28 U.S.C. § 1915(g).

## VI.  **CONCLUSION**

(1) The First Amended Prisoner Civil Rights Complaint, ECF No. 6, is

DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(a).

(2) Marten may amend his pleading, however, by curing the deficiencies in

his claims on or before November 23, 2022.

(3) Failure to timely file an amended pleading may result in AUTOMATIC

DISMISSAL of this suit without further notice, and Marten may incur a strike

under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Marten may voluntarily dismiss this action

pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not

count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Marten a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

(6) Marten's Request for an Extension of Time to File Amended Complaint, ECF No. 12, is DENIED as moot.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 24, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
Senior United States District Judge