IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAYNE MICHAEL MARTEN, # A6094402,<br><br>             Plaintiff,<br><br>      v.<br><br>STATE OF HAWAII, *et al.*,<br><br>             Defendants. | Civil No. 22-00393 SOM-WRP<br><br>ORDER DISMISSING SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT IN PART AND DIRECTING SERVICE |

## ORDER DISMISSING SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is a Second Amended Prisoner Civil Rights Complaint ("SAC") filed by pro se Plaintiff Chayne Michael Marten ("Marten") pursuant to 42 U.S.C. § 1983.[1]  ECF No. 17.  In the SAC, Marten alleges that Defendants violated the First Amendment by interfering with his mail, and the Eighth Amendment by allowing a hazardous condition to persist and denying him

---

[1] Marten is currently incarcerated at the Halawa Correctional Facility.  *See* ECF No. 17 at 1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A6094402"; and select "Search") (last visited Jan. 20, 2023).

adequate medical care.[2]  The claims in the SAC are based on events at the Halawa Correctional Facility ("HCF"), a state prison facility.

After conducting the screening required by 28 U.S.C. § 1915A(a), the Court concludes that the SAC states plausible Eighth Amendment medical care claims against Defendants Cummings and Staff Supervisor Tina in their individual capacities.  These claims shall be served and require a response.  Marten's other claims are DISMISSED for reasons detailed later in this order.  Marten's Motion for Appointment of Counsel is DENIED without prejudice.

## I.  STATUTORY SCREENING

Pursuant to 28 U.S.C. § 1915A(a), the Court is required to screen all civil actions filed by prisoners seeking redress from a government entity or an officer or employee of a government entity.  *See Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016).  During screening, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  "If

---

[2] Marten names as Defendants the State of Hawaii, Michael Bala, Mandy Feldt, Moanikeala Cummings, Christina Vidinha, April Amasi, Mr. Asato, Mr. Weaver, Dr. Hatakeyama, and Staff Supervisor Tina.  ECF No. 17 at 1.

the . . . court determines that any of these grounds is satisfied, it must dismiss the case, and enter a 'strike' against the plaintiff prisoner." *Byrd*, 885 F.3d at 641.

Failure to state a claim under 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

During screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  When it is clear a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[3]

**A.  Factual Background**

On August 21, 2020, Marten slipped and fell because of a puddle on the floor of the HCF's dining hall.  ECF No. 17 at 6, 9.  During the fall, Marten injured his hip, back, and neck.  *Id.* at 9.  Marten attributes his fall to a corrections officer who was standing nearby, Mr. Asato ("Asato").  *Id.*  According to Marten, Asato should have warned inmates about the puddle or had kitchen staff mop it up.  *Id.*  After seeing Marten fall, Asato laughed and pretended that Marten had safely slid into a base, as if he were playing baseball.  *Id.*

Another inmate helped Marten to his feet, and Marten went to the HCF's medical unit.  *Id.* at 10.  In the medical unit, nurse Michael Bala ("Bala") met with Marten and asked him about his fall.  *Id.* at 9, 16.  Bala asked Marten if he wanted to go to the hospital.  *Id.* at 9.  Marten initially told Bala that he thought that going to the hospital "was a good idea," but Marten also expressed concern that he would need to quarantine upon returning to the HCF.  *Id.*  Because of Marten's stated concern, Bala told Marten that it might be better for him to wait and see a doctor at the HCF before going to the hospital.  *Id.*  Bala suggested that Marten wait to see how he felt the next day.  *Id.*  At that point, Marten returned to his housing unit.

---

[3] At screening, Marten's well-pleaded factual allegations are accepted as true.  *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

4

*Id.* The next morning, Marten awoke with severe pain in his neck and back. *Id.* He could barely lift his head from his pillow. *Id.*

On August 23, 2020, Marten told nurse Moanikeala Cummings ("Cummings") that he wanted to go to the hospital or see a doctor immediately. *Id.* at 14. Cummings told Marten to "hang in there." *Id.* The following day, Marten submitted a step-one administrative remedy form asking for X-rays and to see a doctor. *Id.* A week later, Marten met with Dr. Hatakeyama. *Id.* Dr. Hatakeyama ordered X-rays and physical therapy for Marten. *Id.* According to Marten, he waited three months for the X-rays and more than eight months for physical therapy. *Id.* at 12. After the X-rays were taken, Dr. Hatakeyama reviewed them with Marten. *Id.* at 15. Dr. Hatakeyama told Marten that he would refer him to a specialist. *Id.*

On October 1, 2020, Marten submitted a step-two administrative remedy form asking to see a neurosurgeon. *Id.* at 12. On December 23, 2020, Marten again asked to see a neurosurgeon in a step-three administrative remedy form. *Id.* An unidentified official in the HCF's medical unit told Marten that medical staff members were trying to schedule an appointment with a specialist. *Id.* According to Marten, he "constantly" complained to Bala, Mandy Feldt ("Feldt"), Cummings, Christina Vidinha ("Vidinha"), April Amasil ("Amasil"), and Staff Supervisor Tina about how much pain he was in and his desire to see a specialist. *Id.*

5

On February 21, 2021, Medical Director Caroline Mee, who is not named as a Defendant, wrote a letter to Marten in response to his step-three administrative remedy form. *Id*. at 12. In the letter, Mee explained that, among other things, Marten's physical therapy sessions were not immediately scheduled because of the number of inmates ahead of him on the waitlist. *Id*. Mee also told Marten that he was welcome to seek and pay for a visit to a private neurosurgeon. *Id*.

Eventually, Staff Supervisor Tina told Marten's wife that she had been unable to find a specialist that would see Marten, despite trying to do so for "a year and a half." *Id.* at 7. Staff Supervisor Tina told Marten's wife that "no specialist would see inmates." *Id.* at 7. Feldt separately told Marten's wife that the HCF's medical staff had been unsuccessful in trying to find a specialist that would see Marten. *Id.* at 18. At that point, Marten's wife decided to try to find a specialist on her own. Her first call was to the Queen's Medical Center ("Queen's"). *Id.* at 7. Marten's wife was told that Queen's sees inmates from the HCF "all the time," *id.* at 18, and that Queen's has "never turned down an inmate that had a doctor's referral," *id.* at 7. Queen's told Marten's wife to send them a referral, and they would schedule an appointment. *Id.* at 18. Marten then met with a neurosurgeon at Queen's, Dr. Hoshide. *Id.* at 11. Dr. Hoshide prescribed medications for Marten's pain and to help him sleep. *Id.* at 11–12. At some point, Marten asked

Bala why he never received the prescribed medications, and Bala responded that he did not know.  *Id.*

On an unspecified date, a different doctor ordered further X-rays.  *Id.*  After reviewing that imaging, the doctor ordered additional physical therapy.  *Id.*  A few weeks later, Amasi visited Marten and asked him to sign a form.  *Id.*  Amasi told Marten that he needed to sign the form to receive physical therapy.  *Id.*  According to Marten, the form authorized the release of Marten's medical records from Queen's.  *Id.*  Marten told Amasi that he did not feel comfortable signing the form. *Id.*  Because Marten refused to sign the form, he did not receive additional physical therapy.  *Id.* at 17.

At some point, some of Marten's outgoing mail from the HCF "mysteriously disappeared" or was delayed by "weeks."  *Id.* at 13.  On one occasion, a corrections officer, Mr. Weaver ("Weaver"), returned to Marten a piece of mail addressed to the court.  *Id.*  Weaver told Marten that the piece could not be sent as legal mail.  *Id.*

## B.  Procedural Background

Marten commenced this action by signing the original Complaint on August 16, 2022.  ECF No. 1.  The Court received and filed the original Complaint on August 25, 2022.  *Id.*  The Court received the fees associated with this action on September 20, 2022.  ECF No. 4.

On September 23, 2022, the Court issued an Order Dismissing Complaint with Partial Leave to Amend.  ECF No. 5.  The Court dismissed with prejudice any claims against the HCF, State of Hawaii, and Department of Public Safety ("DPS"), because those claims were barred by the Eleventh Amendment.  *Id.* at 6.  The Court also dismissed with prejudice any claim for damages against DPS Director Max Otani in his official capacity and any claims against Otani based solely on his supervisory position with the DPS.  *Id.* at 6–9.

The Court concluded that Marten failed to state a plausible claim based on the medical care that he had received at the HCF.  *Id.* at 9–14.  The Court explained that Marten failed to allege that he suffered a serious medical need immediately after his fall, or that any prison official acted with deliberate indifference to such a need.  *Id.* at 12–13.  The Court further explained that Marten failed to allege that a prison official was deliberately indifferent to a serious medical need in the months after his fall.  *Id.* at 13–14.  Specifically, the Court noted that Marten did not say who he complained to, what he said to them, or how they responded.  *Id.* at 14.  The Court instructed Marten to file an amended pleading on or before October 24, 2022.  *Id.*

Marten signed the First Amended Complaint ("FAC") on October 10, 2022, and the Court received and docketed it on October 17, 2022.  ECF No. 6 at 1, 8.  On October 24, 2022, the Court issued an Order: (1) Dismissing First Amended

Prisoner Civil Rights Complaint with Partial Leave to Amend; and (2) Denying as Moot Request for an Extension of Time to File Amended Complaint.  ECF No. 13. The Court again dismissed Marten's claims against the State of Hawaii because they were barred by the Eleventh Amendment.  *Id.* at 8–9.  The Court also dismissed Marten's claims against various supervisory officials at the HCF.  *Id.* at 10–11.  The Court dismissed Marten's First Amendment claims alleging retaliation and mishandling of his mail.  *Id.* at 12–14.  The Court also dismissed Marten's Eighth Amendment claims based on his fall and the medical care that he had received.  *Id.* at 14–19.  The Court instructed Marten to file any amended pleading on or before November 23, 2022.  Id. at 21.  On November 28, 2022, the Court extended this deadline until December 23, 2022.  ECF No. 16.

Marten signed the SAC on December 17, 2022.  ECF No. 17 at 8.  In the SAC, Marten again names as Defendants the State of Hawaii and various prison officials at the HCF.  *Id.* at 1.  Marten alleges that Defendants violated the First Amendment by interfering with his mail, and the Eighth Amendment by allowing a hazardous condition to persist and denying him adequate medical care.  *Id.* at 5–7, 9–19.  Marten seeks both "future care" for his injuries and "monetary relief."  *Id.* at 8.

9

## III. **DISCUSSION**

**A.  Legal Framework for Claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury because of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

**B. Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Marten again names as a Defendant the State of Hawaii.  ECF No. 17 at 1.  As the Court explained in dismissing the original Complaint, ECF No. 5 at 5–6, and the FAC, ECF No. 13 at 8–9, any claims against the State of Hawaii are barred by the Eleventh Amendment.  *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)).  Any claims against the State of Hawaii, therefore, remain DISMISSED with prejudice.

The Eleventh Amendment does not bar Marten from seeking damages against the remaining Defendants in their individual capacities. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities" (emphasis in original)).  Marten is also not precluded from seeking prospective injunctive relief for ongoing violations of federal law. *See Cornell v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022).  Here, however, Marten identifies no ongoing violation of federal law.  Any claims for injunctive relief against Defendants in their official capacities are therefore DISMISSED without prejudice.[4]

## C.  First Amendment

Marten alleges that some of his outgoing mail "mysteriously disappeared" or was delayed for "weeks."  ECF No. 17 at 13.

Prison inmates have "a First Amendment right to send and receive mail."[5] *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (internal quotation marks and citation omitted).  A prison may adopt regulations or practices for incoming mail which impinge on a prisoner's First Amendment rights if the regulations are

---

[4] Dismissal of certain claims without prejudice does not foreclose Marten from later filing an amended pleading that cures the deficiencies in those claims, subject to the requirements of Fed. R. Civ. P. 15 and orders of this Court.

[5] Although Marten included a "Due Process" heading above his mail-related claims, ECF No. 17 at 13, it is the First Amendment that protects an inmate's right to send and receive mail.

"reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989)).

Marten does not link any Defendant to the disappearance or delay of his outgoing mail. ECF No. 17 at 13. To the extent Marten alleges that Weaver returned a piece of mail to him on one occasion, an isolated, temporary delay in sending one piece of mail is insufficient to state a plausible claim for relief. *See Jackson v. Medina*, Case No. EDCV 13-01930-JVS (DTB), 2016 WL 7638200, at *3 (C.D. Cal. Oct. 31, 2016) ("[A] temporary delay or isolated incident of delay or other mail interference without evidence of improper motive does not violate a prisoner's First Amendment rights."), *report and recommendation adopted*, No. EDCV 13-01930-JVS (DTB), 2017 WL 43919 (C.D. Cal. Jan. 3, 2017); *Grigsby v. Horel*, No. C 08-1475-CRB (PR), 2011 WL 13309071, at *2 (N.D. Cal. July 11, 2011) (same), *aff'd*, 529 F. App'x 859 (9th Cir. 2013).

Marten's claim against Weaver based on the handling of his mail is DISMISSED without prejudice.

**D.  Eighth Amendment**

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Id.* (citations omitted).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective."  *Norbert v. County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (quotation marks and citations omitted).  Under the objective requirement, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation marks and citations omitted).  Thus, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*; *LeMaire v. Maass*, 12 F.3d

14

1444, 1456 (9th Cir. 1993). The subjective requirement, relating to the prison official's state of mind, requires "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation marks and citations omitted). This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

### 1. Slip and Fall

Marten alleges that Asato violated his constitutional rights by not warning him about the puddle on the floor of the HCF's dining hall. ECF No. 17 at 6.

In general, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (internal quotation marks and citation omitted) (ellipsis in original); *see also Sharrott v. Halawa Prison ADA Compliance Team*, Civ. No. 18-00486 JMS-RT, 2019 WL 191638, at *4 (D. Haw. Jan. 14, 2019) ("Courts have generally concluded that prisoners fail to state a constitutional claim regarding simple slip and fall accidents in prisons."); *Ah Cheung v. State of Hawaii*, Civ. No. 17-00257 DKW-KSC, 2017 WL 2785336, at *3 (D. Haw. June 27, 2017) ("Federal courts have repeatedly rejected Eighth Amendment slip and fall claims."). When

exacerbating circumstances are present, however, "[s]lippery floors without protective measures could create a sufficient danger to warrant relief." *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (allowing claim to proceed when inmate was on crutches, he had fallen and injured himself several times, and prison guards were aware of prior falls).

Marten alleges no exacerbating circumstances that elevate his simple negligence claim to a constitutional violation. For example, Marten does not allege that the puddle was on the floor of the HCF dining hall for an extended period. Nor does he allege that any other inmates had fallen and injured themselves because of the puddle. The absence of signs or cones around the puddle, without more, is not enough to state an Eighth Amendment claim. *See Duran v. Tinetti*, No. 1:12-CV-01606 GSA PC, 2013 WL 322514, 2 (E.D. Cal. Jan. 28, 2013) (dismissing Eighth Amendment claim based on lack of warning signs around large puddle). Marten's claim against Asato based on the slippery floor is therefore DISMISSED without prejudice.

### 2. Denial of Adequate Medical Care

Marten alleges that various prison officials denied him adequate medical care after he fell. ECF No. 17 at 5, 7, 9–12, 14–18.

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval*, 985 F.3d at 667 (citing *Estelle v. Gamble*, 429 U.S. 97,

104–05 (1976)).  "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment."  *Sandoval*, 985 F.3d at 667.

"In order to prevail on a claim under the Eighth Amendment for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'"  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  "This includes both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Id.* (quotation marks omitted).

To meet the objective element, a plaintiff must first demonstrate the existence of a serious medical need.  *Estelle*, 429 U.S. at 104.  Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain."  *Edmo v. Corizon*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (quotation marks omitted).  "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Lopez*, 203 F.3d at 1131 (internal quotation marks omitted).  "Serious medical needs can relate to physical, dental and mental health."  *Edmo*, 935 F.3d at 785 (quotation marks omitted).

If a prisoner "establishes a sufficiently serious medical need, he must then show the [official's] response to the need was deliberately indifferent." *Edmo*, 935 F.3d at 786 (quotation marks omitted).   The indifference to a prisoner's medical needs must be "substantial." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013).  "Mere 'indifference,' 'negligence' or 'medical malpractice'" will not support a denial-of-medical-care claim. *Id.* at 1082.  "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id.*  "To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (quotation marks omitted) (brackets in original).

Marten alleges that he injured his hip, neck, and back when he fell.  ECF No. 17 at 9.  Immediately after the fall, Marten "was hardly able to walk." *Id.*  Marten returned to his housing unit from the medical unit in a wheelchair.  Id. at 10.  The morning after the fall, Marten could barely lift his head from his pillow because of "severe," *id.*, or "extreme," *id.* at 6, pain in his neck and back.  The pain caused Marten to remain in bed for days. *Id.* at 9.  Marten describes the pain as chronic, although it has lessened with time. *Id.* at 6.  Based on these allegations, the Court assumes that Marten had a serious medical need.  The Court must next decide

whether Marten has plausibly alleged that any Defendant was deliberately indifferent to his medical needs.

### a. Bala

Bala was the first member of the HCF's medical team to see Marten after his fall. *Id.* at 10. Bala inquired about the circumstances of the fall, and he asked if Marten wanted to go to the hospital. *Id.* Although Marten initially told Bala that he wanted to go to the hospital, Marten also expressed concern about needing to quarantine upon returning to the HCF. *Id.* Given Marten's concerns, Bala suggested that Marten might want to wait and see a doctor at the HCF before going to a hospital and having to quarantine. *Id.* At that point, Marten opted to return to his housing unit. *Id.*

These allegations do not suggest that Bala acted with deliberate indifference to Marten's serious medical needs. Bala let Marten choose between going to the hospital or waiting to see a doctor at the HCF. Marten has not plausibly alleged that waiting to see a doctor was a medically unacceptable option under the circumstances. *See Edmo*, 935 F.3d at 786 (noting that a difference of opinion does not amount to deliberate indifference). Moreover, Marten chose the course of treatment, not Bala. The fact that Marten may have later wished that he had chosen differently does not amount to deliberate indifference by Bala. Marten's claims against Bala are therefore DISMISSED without prejudice.

### b.  Cummings

After Marten decided to wait and see a doctor at the HCF, he returned to his housing unit.  ECF No. 17 at 10.  The next morning, however, Marten could barely lift his head from his pillow.  *Id.*  He felt severe pain in his neck and back.  *Id.*  On August 23, 2020, Marten reported his pain to Cummings.  *Id.* at 14.  Marten told Cummings that he wanted to go to the hospital or see a doctor at the HCF immediately.  *Id.*  In response, Cummings told Marten to "hang in there."  *Id.*  Liberally construed, these allegations state a colorable claim against Cummings that requires a response.  *See Tyler v. Smith*, 458 F. App'x 597, 598 (9th Cir. 2011) ("[Plaintiff] had stated a claim for deliberate indifference against defendant . . . regarding the delays in orthopedic treatment of his knee injury.")

### c.  Dr. Hatakeyama

Dr. Hatakeyama saw Marten about a week after he submitted his step-one administrative remedy form on August 24, 2020.  *Id.* at 14.  Dr. Hatakeyama ordered X-rays and went over the imaging with Marten after they were taken.  *Id.*  Dr. Hatakeyama also ordered physical therapy for Marten.  *Id.*  Because Dr. Hatakeyama suspected that surgery might be required, he also referred Marten to see a specialist.  *Id.* at 5, 15.

Based on these assertions, Marten has not plausibly alleged that Dr. Hatakeyama acted with deliberate indifference to a serious medical need.  Marten

20

states that he waited "nearly three months" for X-rays, "over eight months" for physical therapy, "a year and a half" to see a specialist. *Id.* at 12. Marten does not allege, however, that Dr. Hatakeyama was the reason for these delays. Nor does Marten allege that Dr. Hatakeyama was aware of the delays. Indeed, Marten does not assert that he ever complained to Dr. Hatakeyama about his care. To the extent Marten suggests that Dr. Hatakeyama allegedly "stopped" medications prescribed to him by Dr. Hoshide, *id.* at 5, Marten does not allege that he ever complained to Dr. Hatakeyama about the medications he was receiving. Thus, Marten has not plausibly alleged that Dr. Hatakeyama acted with deliberate indifference to a serious medical need. Marten's denial of medical care claims against Dr. Hatakeyama are DISMISSED without prejudice.

### d.  Staff Supervisor Tina

Staff Supervisor Tina told Marten's wife that she had been unable to schedule an appointment with a specialist for Marten, despite trying to do so "for a year and a half." *Id.* at 7. Staff Supervisor Tina also told Marten's wife that no specialist would see inmates. *Id.* When Marten's wife made a single call to Queen's, however, she was told that they see inmates from the HCF "all the time," *id.* at 18, and they "they never turned down an inmate that had a doctor's referral," *id.* at 7. Queen's instructed Marten's wife to send the referral to schedule an appointment with a specialist. *Id.* at 18. Based on this apparent inconsistency,

21

Marten suggests that Staff Supervisor Tina never attempted to make an appointment for him to see a specialist. *Id.* at 7.

Considering Staff Supervisor's alleged statement that she had tried, without success, for eighteen months to find a specialist that would see Marten, and that fact that Marten's wife was able to find a specialist who would see him with one phone call, Marten's claim against Staff Supervisor Tina may proceed.

### e. Feldt

Marten alleges that Feldt also told his wife that the HCF's medical unit was attempting to schedule an appointment with a specialist for Marten. *Id.* at 18. Marten does not allege, however, that he ever complained to Feldt about wanting to see a specialist. Nor does he allege that Feldt was personally involved in seeking a specialist. Without more, Marten's allegations against Feldt do not meet the high standard for deliberate indifference. *See Chandler v. Guttierrez*, 773 F. App'x 921, 923 (9th Cir. 2019) ("Deliberate indifference is a high standard[.]"). Marten's claims against Feldt are DISMISSED without prejudice.

### f. Amasi

After a doctor ordered additional physical therapy for Marten, Amasi visited Marten and asked him to sign a form. ECF No. 17 at 15. When Marten asked Amasi about the form, she explained that he needed to sign the form to receive physical therapy. *Id.* Marten read the form and saw that it authorized the release

of his medical information from Queen's. *Id.* At that point, Marten told Amasi that he did not feel comfortable signing the form. *Id.*

Based on these statements, Marten has not plausibly alleged that Amasi acted with deliberate indifference to a serious medical need. Marten does not allege that he explained to Amasi the symptoms he was experiencing when this exchange occurred. Nor does he allege that Amasi was otherwise aware of the reasons he needed physical therapy. It is also unclear if Marten ever received additional physical therapy despite his refusal to sign the form. At most, Marten alleges that Amasi asked him to sign a release form. When he declined to do so, she walked away. This does not state a plausible claim for deliberate indifference by Amasi. Marten's claims against Amasi are DISMISSED without prejudice.

### g. Vidinha

Marten briefly asserts that he "constantly" complained to Vidinha and other prison officials about the pain that he was experiencing and his desire to see a specialist. ECF No. 17 at 14. It is not apparent, however, when exactly Marten complained to Vidinha or how she responded to him. Marten acknowledges that he was seen by a doctor at the HCF, X-rays were taken, he received physical therapy, and he was eventually seen by a specialist. Marten has not plausibly alleged that Vidinha was personally involved in denying him medical care. His claims against Vidinha are therefore DISMISSED without prejudice.

### E.  Motion for Appointment of Counsel

Marten asks for court-appointed counsel because he has been unable to find an attorney to represent him.  ECF No. 17.

There is no constitutional right to counsel in a civil case when, as here, a litigant's liberty is not at issue.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Wright v. Dir. of Corr.*, 443 F. App'x 289, 293 (9th Cir. 2011).  A court may request, but cannot compel, counsel to appear pro bono on a plaintiff's behalf. *See* 28 U.S.C. § 1915(e)(1); *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989).  The appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is limited to cases presenting "exceptional circumstances."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  In determining whether "exceptional circumstances" exist, courts consider "the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved."  *Id.* (internal quotation marks and citation omitted).  Neither of these considerations is dispositive, so they must be viewed together.  *Id.*

Here, Marten has not shown that his case presents exceptional circumstances.  The issues presented are not complex, and, judging by the SAC, Marten is ably articulating his claims *pro se*.  Accordingly, the Motion for Appointment of Counsel is DENIED without prejudice to Marten's filing another

request after the SAC is served and Defendants have filed an Answer or other response.

## IV.  <u>CONCLUSION</u>

(1)  Marten's claims against the State of Hawaii are DISMISSED with prejudice.

(2)  Marten's Eight Amendment medical care claims against Cummings and Staff Supervisor Tina  in their individual capacities shall be served and require a response after service is perfected.

(3)  Marten's remaining claims are DISMISSED without prejudice.

(4)  Marten's Motion for Appointment of Counsel is DENIED without prejudice.

## V.  <u>SERVICE ORDER</u>

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the Second Amended Complaint, ECF No. 17, and one separate completed summons each for Defendants Cummings and Staff Supervisor Tina.  The U.S. Marshal shall open a file and retain these documents for use if any Defendant declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq.

and Shelley Harrington, Esq.:  (a) a copy of the Second Amended Complaint, ECF No. 17, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Cummings and Staff Supervisor Tina; and (b) two completed Waiver of Service of Summons forms each for Cummings and Staff Supervisor Tina.

(3)  Defendants Cummings and Staff Supervisor Tina shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Cummings and Staff Supervisor Tina fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Cummings and Staff Supervisor Tina.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendants Cummings and Staff Supervisor Tina shall file a response to the Second Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Marten shall notify the court within one week of any change of address. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may

result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Cummings and Staff Supervisor Tina have filed a response to the Second Amended Complaint, Marten's documents will be deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 23, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
Senior United States District Judge

27